USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/11/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

789 NINTH & 414 EAST 74TH ASSOCIATES
LLC,

                        Plaintiff,

          - against -

PRAKASH HUNDALANI and BINA HUNDALANI,

                 Defendants.

**21 Civ. 5314 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

    Plaintiff 789 Ninth & 414 East 74th Associates LLC ("Plaintiff" or the "Landlord") initiated this action against defendants Prakash Hundalani ("Prakash") and Bina Hundalani ("Bina" and collectively, "Defendants") to recover on a personal guaranty executed on a commercial lease between Plaintiff and Sheridin Fast Food Inc. ("Sheridin" or the "Tenant"). Now before the Court is Plaintiff's motion for summary judgment as to liability and damages pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") or in the alternative, to strike Defendants' jury demand. (See "Motion," Dkt. No. 35; "Brief," Dkt. No. 36.) For the reasons set forth below, the Motion is **GRANTED**, in part, and **DENIED**, in part.

## I.   BACKGROUND

A.   FACTS[1]

Plaintiff owns the building known as 789 Ninth Avenue (the "Building") in New York, New York, which includes a commercial space. Mitchell Rothken ("Rothken") is the manager at Beach Lane Management, Inc. ("Beach Lane Management"), the authorized managing agent of the Building on behalf of Plaintiff. Sheridin is a corporate entity created by Prakash, and Alliance Realty Services ("Alliance" or "Broker") served as the Broker for Sheridin and Defendants.

On or about December 19, 2012, Plaintiff, as landlord, executed a commercial lease agreement (the "Lease") with Sheridin as the corporate tenant for a commercial space, "Space Number 2" (the "Premises"), in the Building. Prakash, through Sheridin, intended to operate a restaurant business

---

[1] Except as otherwise noted, the factual background is derived from the undisputed facts as set forth by the parties in Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts and Defendants' responses thereto. (See "Pl. SUMF," Dkt. No. 37; "Defs. SUMF Resp.," Dkt. No. 47.) The Court has also considered the full record submitted by the parties, including the following declarations and the exhibits attached thereto: Declaration of Mitchell Rothken, "Rothken Decl.," Dkt. No. 38; Declaration of James E. Bayley, "Bayley Decl.," Dkt. No. 39; Declaration of Robert Moore, "Moore Decl.," Dkt. No. 44; Declaration of Prakash Hundalani, "Hundalani Decl.," Dkt. No. 45; Reply Declaration of Mitchell Rothken, "Rothken Reply Decl.," Dkt. No. 48. No further citations to the record will be made herein except as specifically cited. The Court construes any disputed facts discussed in this section and the justifiable inferences arising therefrom in the light most favorable to Defendants, the non-movant, for this motion, as required under the standard set forth in Section II below.

at the Premises. The Lease was set to expire on December 31, 2025. (See "Lease," Rothken Decl., Ex. D, Dkt. No. 38-2.) On or about December 19, 2012, Defendants became guarantors for Sheridin's obligations under the Lease when they executed a written good guy guaranty agreement (the "Guaranty"). The Guaranty provided that Defendants would "unconditionally guarantee to [Plaintiff] . . . the full and timely payment, performance and observance of, and compliance with all of [Sheridin's] obligations under the Lease." ("Guaranty," Rothken Decl., Ex. E, Dkt. No. 38-3.) Attorney Gopal Kukreja, Esq. ("Kukreja") represented Sheridin in negotiating the Lease and represented Defendants in negotiating the Guaranty. The Guaranty that was ultimately executed required that Sheridin provide at least nine months' notice to Plaintiff prior to vacating and surrendering the Premises.

On January 20, 2019, Prakash emailed Rothken and other individuals affiliated with Defendants, informing Rothken of Defendants' intent "to [s]urrender the lease in [n]ine months according to the good guy clause." (Rothken Decl., Ex. F, Dkt. No. 38-4.) A formal letter was attached to the email, providing Rothken with "written notice of nine months prior to [their] intent to vacate and surrender the premises in accordance with the Good Guy Guaranty." (Id.) Though

Defendants contend that Sheridin, not Defendants in their capacity as guarantors, provided the notice to Rothken on January 20, 2019 (see Defs. SUMF Resp. ¶ 6), and that the letter notice was drafted by their late daughter (see Hundalani Decl. ¶ 9), there is no dispute that Defendants signed the written notice to Rothken.

On or about October 21, 2019, Sheridin vacated the leased Premises. Plaintiff alleges that even though Sheridin vacated after giving nine months' notice, it defaulted on the Lease by failing to fulfill all of its obligations at the time of vacatur. These obligations purportedly include payment of the fixed rent and additional rent due at the time of vacatur, repayment of the six-month rent credit, repayment the brokerage commission, and payment of the rent and additional rent for the unexpired period of the Lease. Plaintiff further alleges that Sheridin's default of its obligations triggered Defendants' liability under the Guaranty.

The parties, however, dispute the validity of the Guaranty. Defendants contend that the Guaranty is not valid, and therefore unenforceable, on the grounds that the parties had agreed to a three-month notice provision, and not a nine-month notice provision, that Defendants were not represented by counsel when the Guaranty was signed, and that Rothken is

4

a disbarred attorney who was practicing law without a license when negotiating the Lease and Guaranty on behalf of Plaintiff. Plaintiff counters that the Guaranty is valid as an absolute and unconditional guaranty, and therefore, it remains enforceable.

B.   <u>PROCEDURAL HISTORY</u>

Plaintiff initiated this action on June 21, 2021, seeking to enforce the Guaranty against Defendants. (<u>See</u> "Complaint," Dkt. No. 5.) Defendants filed their Answer, asserting 11 affirmative defenses, including that Plaintiff committed fraud, rendering the Guaranty unenforceable, and that the damages amount alleged by Plaintiff is incorrect. (<u>See</u> "Answer" ¶¶ 67, 70, Dkt. No. 11.)

After the close of discovery, Plaintiff filed its Motion for summary judgment, or in the alternative, to strike Defendants' jury demand, and corresponding Local Rule 56.1 Statement of Undisputed Facts. (<u>See</u> Motion; Brief; Pl. SUMF.) Defendants filed their opposition brief and response to Plaintiff's Statement of Undisputed Material Facts. (<u>See</u> "Opposition" or "Opp.," Dkt. No. 46; Defs. SUMF Resp.) Plaintiff then filed its reply brief. (<u>See</u> "Reply," Dkt. No. 49.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On such a motion, a court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . . ." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. See Celotex, 477 U.S. at 323; Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). If the moving party satisfies its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial" to survive the motion for summary judgment. Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 98–99 (2d Cir. 2003) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original). A

6

factual dispute is material if it "might affect the outcome of the suit," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

In determining whether the moving party is entitled to judgment as a matter of law, the court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Though a party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998), summary judgment is improper if any evidence in the record allows a reasonable inference to be drawn in favor of the opposing party. See Gummo v. Vill. of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996).

### III. **DISCUSSION**

A.   MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment, contending that it is entitled to recover under the Guaranty because it established a prima facie case. Plaintiff argues that because the Guaranty is valid, Plaintiff is entitled to money damages for each of the five causes of action asserted in its

Complaint. The Court will address whether a prima facie case has been established and then address each count in turn.

1.   Validity of Guaranty

In New York, "[a] guaranty must be construed in the strictest manner." VW Credit, Inc. v. Big Apple Volkswagen, LLC, No. 11 Civ. 1950, 2012 WL 919386, at *4 (S.D.N.Y. Mar. 15, 2012) (alteration in original) (quoting Davimos v. Halle, 826 N.Y.S.2d 61, 62 (App. Div. 1st Dep't 2006)). To enforce a written unconditional guaranty in New York, a plaintiff must establish: "(1) an absolute and unconditional guarantee; (2) the underlying debt; and (3) the guarantor's failure to satisfy the unpaid debt." Citicorp Leasing, Inc. v. United American Funding, Inc., No. 03 Civ. 1586, 2005 WL 1847300, at *4 (S.D.N.Y. Aug. 5, 2005) (citing Kensington House Co. v. Oram, 739 N.Y.S.2d 572, 572 (App. Div. 1st Dep't 2002)). Defendants contend that the Guaranty cannot be enforced because it is not valid. They claim that by this argument, they have created a genuine dispute of material fact.

The Guaranty at issue here is a "good guy" guaranty that effectively eliminates the liability of the guarantor upon a tenant's surrender of the leased property, assuming that all obligations arising pursuant to the terms of the underlying Lease have been fulfilled up to the date of surrender. (See

Guaranty at 1); see also Russo v. Heller, 915 N.Y.S.2d 268, 269-70 (App. Div. 1st Dep't 2011) ("'Good Guy' guaranties are commonly understood to apply to obligations which accrue prior to the surrender of the lease premises, and this obligation, once accrued, persists even after surrender of the premises[.]").

Pursuant to the Guaranty, to terminate their liability, Defendants must pay the fixed annual rent, additional rent, and all other charges and sums due and payable by Sheridin, including reasonable attorneys' fees and disbursements, up until the date that Sheridin performs all the following: (1) provides written notice to the Landlord of its intent to vacate and surrender at least nine months prior to the actual date of the vacatur and surrender; (2) vacates and surrenders the Premises to the Landlord pursuant to the Lease terms; (3) delivers the keys; (4) repays any free rent or rent concession; (5) repays any brokerage commissions paid by Landlord to the Broker; and (6) pays all obligations up to and including the date which is the later of (x) the actual receipt of the obligations; (y) surrender of the Premises; or (z) receipt by the Landlord of the keys to the Premises. (See Guaranty at 1.)

Generally, "unconditional guarantees are enforceable if
written in 'clear and unambiguous' terms." HSH Nordbank Ag
N.Y. Branch v. Swerdlow, 672 F. Supp. 2d 409, 418 (S.D.N.Y.
2009) (quoting Otto Roth & Co., Inc. v. Gourmet Pasta, Inc.,
715 N.Y.S.2d 78, 80 (App. Div. 2d Dep't 2000)). Here, the
Guaranty expressly states that it "is an absolute and
unconditional guaranty of payment and performance." (Guaranty
at 1.) It continues that it "cannot be modified, waived or
terminated unless such modification, waiver or termination is
in writing, signed by Landlord." (Id. at 2.) The Guaranty was
signed by the parties on December 19, 2012, and that the
document is absolute and unconditional is written clearly and
unambiguously.

Defendants, however, raise several affirmative defenses
to create a dispute as to the Guaranty's validity. In New
York, "[w]here a guaranty states that it is 'absolute and
unconditional,' guarantors are generally precluded from
raising any affirmative defense." HSH Nordbank Ag N.Y. Branch,
672 F. Supp. 2d at 418 (citation omitted); see also First N.Y.
Bank for Bus. v. DeMarco, 130 B.R. 650, 654 (S.D.N.Y. 1991)
("[U]nconditional guaranties have been held to foreclose, as
a matter of law, guarantors from asserting any defenses or
counterclaims."). Moreover, "the only affirmative defenses

10

that are not waived by an absolute and unconditional Guaranty are payment and lack of consideration for the Guaranty." CIT Group/Com. Servs., Inc. v. Prisco, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (citing Walcutt v. Clevite Corp., 191 N.E.2d 894, 897 (N.Y. 1963)). Affirmative defenses, therefore, are generally not available to challenge an absolute and unconditional guaranty.

In arguing that the Guaranty is not valid, Defendants specifically assert the affirmative defense that Plaintiff committed fraud by changing the three-month notice requirement to a nine-month notice requirement in the Guaranty. However, in New York, where a guaranty is "absolute" and "unconditional," fraud is not a viable defense. See BNY Fin. Corp. v. Clare, 568 N.Y.S.2d 65, 67 (App. Div. 1st Dep't 1991) (declining to allow defense of fraud in the inducement where "guaranty specifically provided that it was absolute, unconditional, unlimited and could not be altered or discharged orally") (citing Citibank, N.A. v. Plapinger, 485 N.E.2d 974 (N.Y. 1985)); North Fork Bank v. ABC Merch. Servs., Inc., 853 N.Y.S.2d 633, 702 (App. Div. 2d Dep't 2008) ("[S]ince the guaranty, by its terms, was absolute and unconditional regardless of the validity or enforceability of

11

any other obligation, . . . fraud in the inducement is not a viable defense to enforcement of the guaranty[.]").

Here, even if the fraud defense were available, the Court is not persuaded that Defendants have created a genuine issue of material fact as to the validity of the Guaranty via their fraud theory. As a matter of law, to establish fraud in New York, the party asserting that defense must show "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the complaining party]; and (iv) resulting damages." Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (internal quotation marks omitted) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011)).

Defendants have failed to show that Plaintiff made a material misrepresentation or had an intent to deceive sufficient to create a genuine dispute of material fact to survive summary judgment. Defendants rely on a self-serving declaration provided by Prakash in which he declares that he confirmed with Kukreja, his attorney, on the phone the morning of December 19, 2012, shortly before he was supposed to sign the Guaranty, that it would contain the three-month notice provision. (See Hundalani Decl. ¶ 7.) However, self-serving

declarations, not supported by evidence, are generally not sufficient to create an issue of material fact. See Dreni v. PrinterOn Am. Corp., No. 18 Civ. 12017, 2021 WL 4066635, at *13 (S.D.N.Y. Sept. 3, 2021) (finding that plaintiff's "self-serving deposition testimony and declaration are completely unsupported by the record and therefore cannot create a genuine issue of material fact"); Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 656 (2d Cir. 2009) (summary order) (finding that self-serving deposition testimony without "hard evidence adduced during discovery . . . is insufficient to defeat summary judgment"). Defendants also present an email thread between Defendants and Alliance, the Broker, prior to the December 19, 2012 signing of the Guaranty, in which a red-line edited version of the Guaranty that included a three-month notice provision was shared. (See Dkt. No. 45-2.) Though Prakash and Kukreja corresponded with Kenneth Date Chong of Alliance in this email thread, the evidence in the record does not show that Plaintiff or Rothken was copied in this specific correspondence. Even if a draft of the three-month notice provision was shared among those on the email chain, there is no indication that Plaintiff or Rothken agreed to such a position other than Prakash's conversation with Kukreja, which constitutes inadmissible hearsay as the Court

addresses below. Defendants have thus failed to create a dispute of material fact as to whether Plaintiff misrepresented to Defendants that a three-month notice provision would be provided in the final Lease and Guaranty.

Further, Prakash declares that Kukreja told him that Plaintiff agreed to a three-month notice provision immediately prior to signing the document. But that evidence is inadmissible hearsay where Kukreja was neither deposed nor submitted an affidavit attesting to that fact. See Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600-01 (S.D.N.Y. 2018) (declining to consider contents of phone conversation between a defendant and potential witness "who was never deposed, has not submitted an affidavit or declaration" as inadmissible hearsay); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated.") (emphasis added).

As additional support for their claims of fraud, Defendants assert that on December 19, 2012, when the Guaranty was signed, Kukreja was not present with Defendants, Defendants signed the document in a "dimly lit room" at

Plaintiff's office, and the Guaranty was not attached to the Lease but was instead brought to Defendants by another employee. (Hundalani Decl. ¶ 8.) Defendants also concede that they signed both the Lease and the Guaranty without reading them. (See id.)

The Court is not persuaded that the circumstances presented by Defendants, such as a dimly lit room and the Guaranty not being attached to the Lease create a material dispute regarding the validity of the Guaranty. Further, Defendants have not demonstrated that Kukreja's absence at the signing is attributable to any fraud committed by Plaintiff. Defendants proffered no facts suggesting that Plaintiff procured Kukreja's absence or made any misrepresentations to induce Defendants to sign the document without Kukreja present.

Additionally, while it may be undisputed that Defendants did not read the Guaranty, that consideration does not undermine its validity, as "[a] party to a writing is presumed to have read and understood the document which [he] signed." Ford Motor Credit Co. LLC v. Orton-Bruce, No. 14 Civ. 5382, 2017 WL 1093906, at *8 (S.D.N.Y. Mar. 22, 2017) (internal quotation marks omitted) (quoting Preston Frankford Shopping Ctr. Dallas, Tx. L.P. v. Butler Dining Servs., LLC, 757 F.

15

Supp. 2d 248, 252 (W.D.N.Y. 2010)). The Guaranty itself comprises two-pages, single-spaced, and though it is written as a contract, there is no indication that Defendants were unable to read the document or that Plaintiff prevented Defendants from reading the document.

Defendants also argue that the Court should be skeptical of Plaintiff's claim that the Guaranty is valid because Rothken is a disbarred attorney who was previously found to have mishandled client funds and who engaged in the unauthorized practice of law by negotiating the Lease and Guaranty on Plaintiff's behalf, with Defendants' attorney, and making legal arguments about surrender. (See Opp. at 4-5.) Even when viewed in the light most favorable to Defendants, that Rothken had allegedly stolen client funds previously constitutes a prior bad act that bears no relevance to Plaintiff's conduct or Defendants' obligations underlying the instant action. It fails to create a genuine dispute of material fact.

Further, Defendants fail to show that Rothken held himself out as an attorney in the underlying transaction, again failing to create a dispute of material fact as to the validity of the Guaranty. Though Defendants claim that Rothken negotiated the Lease and Guaranty, allegedly engaging

in the unauthorized practice of law, Defendants present no admissible evidence that he did so acting as an attorney or that he held himself out as an attorney.

Rothken is the manager of Beach Lane Management, the managing agent of the Building at issue. Defendants fail to cite any case law demonstrating that Rothken, in his capacity as manager of the leasing agency, was not authorized to negotiate a lease on behalf of Plaintiff. Rothken declares in his own affidavit that he negotiated the lease as a business transaction on behalf of Plaintiff, which was fully within Plaintiff's knowledge and authority. (See Rothken Reply Decl. ¶ 5.)

Additionally, Defendants had retained their own, presumably competent, attorney, Kukreja, who negotiated the terms of the Lease and the Guaranty on behalf of Defendants. There is no evidence in the record that Kukreja objected to the inclusion of the nine-month notice provision in the Guaranty after the Lease and Guaranty had been signed. And Defendants were aware that Kukreja would not be present at the signing of the Lease and Guaranty, with no evidence in the record showing that Plaintiff or Rothken played any role in securing Kukreja's absence. Thus, Defendants' fraud defense is unavailing.

Plaintiff further counters that even if it were proper for the Court to consider Defendants' fraud defense, any alleged fraud has no bearing on the validity of the Guaranty because Defendants effectively affirmed the terms of the Guaranty when they provided Plaintiff with nine months' notice regarding Sheridin's intent to vacate the Premises. Under New York law, such ratification is sufficient, and the Court is persuaded that the evidence shows that Defendants effectively "confirmed, ratified and approved" the Guaranty despite their current allegations of fraud. Sheindlin v. Sheindlin, 450 N.Y.S.2d 881, 882 (App. Div. 2d Dep't 1982) (determining that a belated attempt to nullify a separation agreement after it was "confirmed, ratified and approved, and at least partially complied with" is insufficient to repudiate a contract on duress grounds).

Indeed, the evidence in the record conclusively establishes that on January 20, 2019, Defendants, with the assistance of their now-late daughter, emailed Rothken expressly providing notice of their intent to vacate the Premises at the Building, roughly nine months in advance of their intended date of vacatur. At that time, Defendants did not notify Plaintiff that they were surprised, or that they were operating under the impression, that the notice

requirement was three months. Though Defendants could have
objected to the nine-month notice provision before informing
Plaintiff of their intent to vacate, they instead emailed
Plaintiff explicitly acknowledging that provision as written
in the Guaranty and attempted to comply with the terms of the
Guaranty until the date of vacatur. Moreover, over the course
of the nine months prior to October 21, 2019, Sheridin's date
of vacatur, Defendants did not once raise that they believed
Plaintiff committed fraud or that the notice requirement had
been altered.

Though Defendants need not have raised that the Guaranty
be rescinded upon fraud grounds "immediately upon notice of
the fraud," the issue should have been raised within a
"reasonable period after notice of the fraud." Banque Arabe
Et Internationale D'Investissement v. Maryland Nat'l. Bank,
850 F. Supp. 1199, 1211 (S.D.N.Y. 1994), aff'd, 57 F.3d 146
(2d Cir. 1995). This "[r]easonable time is inceptive from the
receipt by the rescinder of word putting him on notice. It is
then incumbent upon him to pick up the scent and nose to the
source." Id. (internal alterations and quotation marks
omitted) (quoting Gannett Co., Inc. v. Register Publ'g Co.,
428 F. Supp. 818, 828 (D. Conn. 1977)). If he fails to confirm

such a suspicion, then "entitlement to rescission disappears." Id. (quoting Gannett Co., Inc., 428 F. Supp. at 828).

Here, even if Plaintiff committed fraud, the fraud defense would still fail because Defendants affirmed the Guaranty with the nine-month notice provision up to and including the period of their vacatur. Defendants failed to challenge the enforceability of the nine-month notice provision, and all parties to the action likewise proceeded with no objection.

Defendants argue that they were unable to timely object to the notice issue because their daughter was killed shortly after January 20, 2019. Defendants' loss of their daughter, however, has no bearing on the circumstances at issue here. The Guaranty was signed on December 19, 2012, providing Defendants with notice of the nine-month provision since that date and certainly as of January 20, 2019. Still, Defendants did not object to the provision, even at the date of vacatur on October 21, 2019, roughly seven years after the Lease and Guaranty were signed. The Court finds that even if fraud were a viable defense and Defendants had a colorable argument that Plaintiff committed fraud, Defendants elected to ratify the Guaranty with the nine-month notice provision, rendering the defense meritless.

20

Accordingly, the Court finds that there is no genuine dispute of material fact that the Guaranty is valid, absolute, and unconditional, satisfying the first element required under New York law to enforce a guaranty.

Further, the Court finds that summary judgment is appropriate regarding the remaining elements. There is no dispute that Sheridin owes an underlying debt, as Sheridin did not pay the remaining balance due under the Lease. (See, e.g., "Rent Ledger," Rothken Decl., Ex. G, Dkt. No. 38-5.) Also, the guarantors -- here, Defendants -- have likewise failed to satisfy the debt pursuant to the terms of the Guaranty, as the underlying debt remains outstanding. (See id.) Thus, Plaintiff is entitled to enforce the terms of the Guaranty.

2.  Causes of Action

Plaintiff asserts five causes of action in its Complaint, alleging that it is entitled to (1) fixed rent and additional rent due at vacatur; (2) rent credit and concession; (3) brokerage commission; (4) rent and additional rent for the unexpired portion of the Lease; and (5) reasonable attorneys' fees and costs. (See Complaint.) Plaintiff seeks summary

judgment on each cause of action, which the Court addresses in order.

> a. <u>Count One: Fixed Rent and Additional Rent Due at Vacatur</u>

On Count One, Plaintiff argues that it is entitled to fixed annual rent and additional rent[2] totaling $19,419.83. Pursuant to the Lease, Sheridin was liable for all "Rent payable to the date on which this lease is terminated or Landlord re-enters or obtains possession of the Premises." (Lease § 19.1(c).) In reaching the $19,419.83 figure, Plaintiff calculated that Sheridin vacated the premises on or about October 21, 2019, the base rent for October 2019 amounted to $8,695.00, October water and sewer charges amounted to $613.26, and real estate taxes amounted to $10,930.68, totaling $20,238.94, less a credit in the amount of $819.11. Thus, according to Plaintiff's calculation, Defendants owe $19,419.83 in fixed annual and additional rent up to the date of vacatur.

Defendants challenge Plaintiff's accounting, contending that Plaintiff is entitled to only $12,525.24 on the first cause of action because Plaintiff failed to consider that the

---

[2] "Additional Rent" is defined in the Lease as "All sums, other than the Fixed Rent, payable by Tenant to Landlord under this lease, including the payment of deficiencies and increases in the Security, if any." (Lease § 1.1.)

22

rents and fees should have been prorated to October 21, 2019 for that month. According to Defendants' calculation, had the base rent for October 2019 been prorated to October 21, 2019, Defendants would owe rent in the amount of $5,796.66. The prorated real estate taxes would amount to $6,708.14, and the prorated water and sewer charges would amount to $20.44. Therefore, Defendants owe at most $12,525.24.

Plaintiff argues in its Reply that Defendants are not entitled to a prorated amount for the month of October 2019 pursuant to the Lease. As Plaintiff points out, Section 2.2 of the Lease provides that: "Rent shall be pro-rated for any partial month according to the number of days in the month occurring at the beginning of the Term[3] but at any other point in the Term a full month of Rent shall be due for any month or portion thereof." (Lease § 2.2.) The Court reads this provision to mean that only the first month of the entire Term is prorated, after which every month shall be paid in full even if the Lease does not terminate on the last day of the month. Thus, despite Sheridin vacating the Premises in the middle of October, the terms of the Lease indicate that

---

[3] "Term" is defined as "[t]he period commencing on the Commencement Date and ending on the Expiration Date, subject to earlier termination or extension of this lease pursuant to the terms hereof." (Lease § 1.18.)

the base rent for the month of October 2019 is to be paid in full, not prorated, as it is not the beginning of the Term.

For the real estate taxes, Plaintiff argues that Exhibit F to the Lease provides that "[t]he Tax Payment shall be due and payable on demand after Tenant is invoiced for the amount, but Landlord may permit Tenant to make the Tax Payment in monthly installments." (Lease, Ex. F ¶ 3.) Thus, the Lease does not provide that real estate taxes are to be prorated but that once invoiced, Sheridin is liable for the full amount, which can be paid in installments. Plaintiff billed Sheridin in the amount of $10,930.68 for the first installment of the 2019/2020 fiscal year real estate taxes, which Sheridin, along with Defendants, had not paid. (See Rothken Decl. ¶ 16; Rent Ledger at 8.) Accordingly, Defendants are liable in the amount of $10,930.68 in real estate taxes, which accounts for the first installment of real estate taxes for the 2019/2020 fiscal year.

For the October 2019 water and sewer charges, which appear to account for the three-month period from October 2019 to December 2019, Plaintiff argues that it is entitled to $613.26 from Defendants. According to the Rent Ledger, Plaintiff billed Defendants for the October 2019 water and sewer charges on October 1, 2019, which was not paid. (See

24

Rent Ledger at 8.) Defendants dispute Plaintiff's calculation and contend that the water and sewer bill likewise should be prorated, amounting to $20.44.[4]

Plaintiff counters that Defendants are liable for the full amount of the October 2019 water and sewer charges because the Lease provides that Sheridin is required to pay those charges "when the same become due and payable." (Lease § 8.1.) Section 8.1 provides, in relevant part: "Tenant shall be solely responsible for and shall promptly pay to Landlord or the utility company, as applicable, as and when the same become due and payable, all charges for water [and] sewer . . . ." (Id.) Defendants do not identify any other provision in the Lease that states that the amount shall be prorated upon vacating the Premises.

Accordingly, the Court does not find that Defendants raised a genuine dispute of material fact regarding the fixed and additional rent due under the Lease and guaranteed by Defendants. The Court finds that Plaintiff is entitled to a total amount of $19,419.83 in fixed rent and additional rent that was due on the date of vacatur. Plaintiff's motion for summary judgment on Count One is granted.

---

[4] Defendants do not indicate how they arrived at the $20.44 amount for the prorated calculation of the water and sewer bill.

b.   <u>Count Two: Rent Credit and Concession</u>

Plaintiff argues that Defendants owe $21,750.00 for repayment of the rent concession granted to Sheridin, which it failed to pay upon vacating the Premises. Defendants do not raise any argument in their Opposition disputing this cause of action or calculation.

Plaintiff granted Sheridin rent credit in the amount of $3,625.00 per month from January 2013 to June 2013, totaling $21,750.00. (<u>See</u> Rent Ledger at 1.) Further, Exhibit A of the Lease indicates that if Sheridin breaches any provision of the Lease, "Landlord shall also be entitled to the repayment of any rent credit therefore enjoyed by [Sheridin], which sum shall be deemed additional rent hereunder." (Lease, Ex. A at ¶ C.) As Sheridin defaulted on the Lease (<u>see</u> <u>infra</u> Section III.B), Landlord is entitled to the rent credit from Sheridin, which constitutes "additional rent" for which Defendants are obligated to repay. Thus, Defendants owe Plaintiff $21,750.00 in rent credit for the period from January 2013 to June 2013. Plaintiff's motion for summary judgment on Count Two is granted.

c.   <u>Count Three: Brokerage Commission</u>

Plaintiff alleges that Defendants owe Plaintiff the brokerage commission in the amount of $6,666.70, which

Sheridin failed to pay. Defendants contend that it is improper to impose on them the obligation to pay the brokerage commission because the Lease does not require that it be repaid.

In arguing that Defendants owe Plaintiff the brokerage commission, Plaintiff cites to Section 21.1 of the Lease, which states in relevant part:

> Tenant represents to Landlord that it has dealt with no broker in connection with this lease other than the Broker. [5] Tenant shall indemnify, defend and hold harmless Landlord from and against any claims for any brokerage commissions or other compensation which made by any broker (other than the Broker) alleging to have dealt with tenant in connection with this lease, and all costs, expenses, liabilities and damages in connection therewith, including reasonable attorneys' fees and expenses. Landlord shall pay any commission due the Broker pursuant to a separate agreement between Landlord and the Broker.

(Lease § 21.1.) The Guaranty provides that as a condition of relieving Defendants of liability, as guarantors, they are required to "repa[y] any brokerage commissions paid by Landlord to the Broker with respect to the Lease[.]" (Guaranty at 1.)

The Court agrees with Defendants that based on a plain reading of the Lease, Section 21.1 does not obligate Sheridin to repay Plaintiff any brokerage commission that Plaintiff

---

[5] Section 1.2 of the Lease defines "Broker" as "Alliance Realty Services." (Lease § 1.2.)

owes to the Broker -- here, Alliance. In fact, Sheridin would be obligated only to "indemnify, defend and hold harmless Landlord" for those claims for brokerage commissions made by any broker *other than* Alliance, which is not at issue here. (Lease § 21.1.) According to the Lease, the Landlord is the only party obligated to pay a brokerage commission to Alliance, and no part of that obligation is shifted to Sheridin.

However, the Court recognizes that while the Lease does not obligate the Tenant to repay the brokerage commission, the Guaranty imposes this condition upon Defendants. Though ordinarily a guaranty is considered a distinct obligation, where "the history and subject matter shows them to be unified," the guaranty and underlying contract -- here, the Lease -- can be interpreted together. Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v. Kvaerner a.s., 671 N.Y.S.2d 905, 909 (App. Div. 1st Dep't 1998) (internal quotation marks and citation omitted). Here, the Lease specifically identifies Prakash and Bina as Sheridin's guarantors who are joint and severally liable under the Lease (see Lease § 1.9), and expressly provides that the Guaranty is annexed to the Lease as Exhibit H (see id. § 25.1). These documents were negotiated and signed roughly contemporaneously and concern the same subject matter. The Court thus finds that the

Guaranty and Lease are to be read together because the history and subject matter show the documents to be unified. See also 228E58STR LLC v. Koleksiyon Mobilya San A.S., No. 19 Civ. 7795, 2020 WL 4260959, at *7 (S.D.N.Y. July 23, 2020) (reading guaranty and underlying lease as "part of a single agreement"). Further, the plain language of the Lease demonstrates that these two documents are part of a single agreement, and the language of the Guaranty establishes that Defendants are "liable under the Guaranty for tenant's payment and performance obligations *arising under the Lease*[.]" Id. (emphasis in original).

Though the Guaranty expressly states that Defendants would be required to repay the brokerage commissions paid by Plaintiff to the Broker, the Lease itself does not contain any provision obligating the Tenant to repay the brokerage commission paid by Plaintiff to the Broker. Because no such underlying obligation exists in the Lease, and Plaintiff has failed to identify such an obligation on the part of Sheridin, the Court finds that, regarding this issue, Defendants raise a dispute of material fact sufficient to overcome summary judgment. Thus, Plaintiff's motion for summary judgment on this count is denied.

d.   <u>Count Four: Rent for Unexpired Period of Lease</u>

Plaintiff argues that Defendants owe $225,563.12 in rent and additional rent due for the unexpired term of the Lease. Defendants challenge Plaintiff's argument on several grounds, including that the Lease and Plaintiff's moving papers are inconsistent regarding the Lease's expiration date, creating a dispute of material fact, and that Plaintiff's calculation of damages is incorrect. While the Court finds that Plaintiff is entitled to summary judgment on this count as to liability, Defendants raise a dispute of material fact as to damages.

Section 19.1 of the Lease provides that if Sheridin defaults or the Landlord reenters or obtains possession of the Premises, the "Tenant shall pay Landlord all Rent payable to the date on which this lease is terminated or Landlord re-enters or obtains possession of the Premises." (Lease § 19.1(c).) The Lease then provides that the Tenant is required to pay Landlord any deficiency between (i) the aggregate rent for the period constituting the unexpired portion of the Term and (ii) any rents Landlord collects for that period, under any re-letting of the Premises. (<u>See</u> <u>id.</u> § 19.1(d).) Specifically, pursuant to the Lease, the Landlord may recover from the Tenant "the amount by which (i) the unpaid Rent for the period which otherwise would have constituted the

unexpired portion of the Term . . . exceeds (ii) the then fair market rental value of the Premises, including the Additional Rent for the same period, both discounted to present value at an annual rate of interest equal to five (5%) percent." (Id. § 19.1(e).)

The Court finds that Plaintiff is entitled to rent and additional rent according to the calculation set forth in Section 19 of the Lease. Though Defendants are liable on Count Four, Defendants contend, and the Court agrees, that a genuine dispute of material fact exists as to the damages calculation.

Plaintiff re-let the Premises on May 26, 2020 to O!Nigiri and Skewers NYC, Inc. d/b/a Onigiri and the POT NYC (collectively, the "New Tenant") for a ten-year term from May 2020 to June 2030. (See Rothken Decl. ¶ 31; "New Lease," Moore Decl., Ex. Q, Dkt. No. 44-2.) After the New Tenant defaulted, Plaintiff re-let the Premises to Chook Issarangkool (the "Second Tenant") on June 24, 2021 pursuant to a lease agreement. (See id. ¶ 32; "Second Lease," Rothken Decl., Ex. N, Dkt. No. 38-12.)

Plaintiff argues that it is entitled to $225,563.12 based on a computation that calculates the rent and additional rent owed for the period from November 2019 to June 30, 2021, to be $139,124.99 (see Rothken Decl. ¶ 34) and calculates the

rent and additional rent owed for the period from July 2021 to December 2024[6] to be $83,438.13 (see id.).

However, the Court finds that Plaintiff's calculation on the rent of the unexpired portion contains several inconsistencies without citations to the record of where the figures are derived. For example, in calculating the rent and additional rent from November 2019 to June 2021, Plaintiff calculates the fixed rent under the New Lease, which was signed in May 2020, for the first year as $5,135.00 per month. However, the New Lease signed by the New Tenants (see New Lease, Ex. A ¶ A) provides that the fixed rent for the first year is $7,250.00 per month, not $5,135.00, as Plaintiff

---

[6] Defendants also assert that a dispute of material fact exists as to the Lease's expiration date. While the Lease itself provides that its expiration date is December 31, 2025 (see Lease § 1.5), Plaintiff calculates the rent for the unexpired period of the Lease based on an expiration date of December 31, 2024. In fact, since the filing of its Complaint, and in virtually all of its subsequent filings, Plaintiff has calculated the damages, including the rent demanded in Count Four, based on an end date of December 31, 2024. Though Plaintiff acknowledges in its Reply and in Rothken's Reply Declaration that the Lease itself provides for an expiration date of December 31, 2025, Plaintiff does not now assert that the calculation be based on an end date of December 31, 2025. Thus, the Court finds that Plaintiff effectively waived enforcement of the December 31, 2025 expiration date as the date upon which the rent for the unexpired period of the Lease should be calculated, and instead, the calculation on Count Four shall be based on an expiration date of December 31, 2024. See Am. Int'l Grp. Eur. S.A. (Italy) v. Franco Vago Int'l, Inc., 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ("A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right."); Gen. Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist., 647 N.E.2d 1329, 1331 (N.Y. 1995) ("Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage[.]").

contends (see Rothken Decl. ¶ 34.v). Plaintiff provides no citation to the record for the $5,135.00 figure.

Additionally, though Plaintiff re-let the Premises to the New Tenant from May 2020 to June 2021, the calculation does not include the additional rent New Tenant paid under the New Lease nor reduces that amount to the present value at a rate of five percent, as stated in the Lease. Section 19.1(e) of the Lease specifically states that the Landlord may recover the unpaid rent for the period of the unexpired portion of the term to the extent that it "exceeds [] the then fair market rental value of the Premises, *including the Additional Rent for the same period,* both discounted to present value at an annual rate of interest equal to five [] percent." (Lease § 19.1(e) (emphasis added).)

Plaintiff then separately calculates the damages for rent and additional rent from the period beginning July 2021, the month after Plaintiff re-let the Premises to the Second Tenant, to December 31, 2024, the supposed Lease expiration date used by Plaintiff throughout the litigation in this Court. In calculating the damages for this period, Plaintiff *does* factor in additional rent under the Second Lease and the five percent present value into the computation. Plaintiff provides no explanation as to why the period that included

the New Lease was not calculated at a five percent rate of the present value, or why the additional rent under the New Lease was not accounted for.

Moreover, the calculations provided by Plaintiff contain basic arithmetic errors. For example, Plaintiff incorrectly calculates the rent for the period of July 2022 to June 2023 under the Second Lease (12 months' rent at a rate of $7,210 per month) to be $86,250, rather than $86,520, thereby incorrectly stating the damages calculation on Count Four. (See Rothken Decl. ¶ 35.b.)

Defendants also assert that the damages calculation in Count Four is incorrect and should be based entirely on Plaintiff re-letting the Premises to the New Tenant. Defendants argue that in a prior state court matter, 789 Ninth & 414 East 74th Associates LLC v. Hundalani et al., No. 161090/2019 (N.Y. Nov. 13, 2019) (the "State Court action"), involving the same parties and same underlying transaction, Plaintiff calculated the entire damages for Count Four to be $79,146.32, based only on Plaintiff re-letting the Premises to the New Tenant in May 2020. (See "State Court Reply and Opposition Affidavit of Mitchell Rothken," Moore Decl., Ex. P ¶ 6, Dkt. No. 44-2.) However, the State Court action was initiated prior to Plaintiff again re-letting the Premises to

the Second Tenant in June 2021, which renders Defendants'
calculation incorrect. Defendants additionally argue that the
damages calculation should be reduced by $904.93 because the
12-year term of the Lease ended precisely on December 18,
2024, the date to which the rent should be prorated, resulting
in the $79,146.32 amount being reduced by $904.93, thereby
totaling $78,241.39.

The Court finds that both Plaintiff and Defendants'
calculations as to damages are incorrect, as they are
inconsistent with the record, thereby raising a dispute of
material fact as to the proper calculation of damages.
Accordingly, while summary judgment is appropriate as to
Defendants' obligation to pay the rent and additional rent
due on the unexpired term of the Lease, there remains a
triable issue on the precise damages figure on Count Four.

e.   Count Five: Attorneys' Fees[7]

Plaintiff seeks to recover attorneys' fees in this
matter. Both the Lease and the Guaranty entitle Plaintiff to
recover attorneys' fees. (See Lease § 19.5; Guaranty at 1.)
The Lease states in relevant part: "Tenant shall also

---

[7] Plaintiff's Complaint incorrectly labels this count as Plaintiff's
"Sixth Cause of Action" even though there are only five causes of action
alleged in the Complaint. (Complaint at 12.) Thus, the Court will label
this count as Count Five.

reimburse Landlord for all costs and expenses (including reasonable attorneys' fees and disbursements), incurred by Landlord in connection with a default by Tenant . . . if Landlord prevails in such legal action[.]" (Lease § 19.5.) The Guaranty likewise provides: "Guarantor further agrees to save Landlord harmless and to indemnify Landlord against any liabilities, costs, and expenses, including reasonable attorneys' fees, disbursements and court costs[.]" (Guaranty at 1.) Because Plaintiff prevailed in enforcing the Guaranty, it is entitled to attorneys' fees.

Ordinarily, "[a]n award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." Vigo v. 501 Second St. Holding Corp., 994 N.Y.S.2d 354, 356 (App. Div. 2d Dep't 2014). However, "[a]n application for an award of attorney's fees is premature before the 'ultimate outcome' of a controversy has been reached." J.P. & Assocs. Props. Corp. v. Krautter, 960 N.Y.S.2d 854, 856 (App. Term 2d Dep't 2013); see also Hengjin Sun v. China 1221, Inc., No. 12 Civ. 7135, 2016 WL 1587242 (S.D.N.Y. Apr. 19, 2016) (finding "that briefing on the issue

of attorneys' fees and costs would be premature until damages are awarded to the Remaining Plaintiffs").

Here, while Plaintiff has prevailed as to liability in enforcing the Guaranty, at least as to Counts One, Two, and Four, the Court finds that Plaintiff is entitled to attorneys' fees. However, as there exists a dispute of material fact that precludes entry of judgment on damages in this matter, the ultimate outcome of this action has not yet been reached. Accordingly, the Court finds that a determination of attorneys' fees at this juncture is premature. Thus, Plaintiff's motion for summary judgment on Count Five is granted as to liability but denied as to damages.

B.   AFFIRMATIVE DEFENSES

Plaintiff also challenges each affirmative defense raised by Defendants in their Answer. Defendants raise 11 affirmative defenses: (1) failure to state a claim, (2) unclean hands, (3) fraud, (4) Defendants' compliance with the Guaranty, (5) surrender, (6) improper calculation as to damages, (7) that Plaintiff caused its own damages, (8) that Defendants are entitled to an offsetting of damages through the security deposit, (9) Plaintiff's unreasonable refusal of consent to a proposed assignment, (10) compensation by a third party or collateral source, and (11) estoppel. (See Answer.)

37

Where Plaintiff "has established a *prima facie* case of entitlement to recover under a guaranty, the defendant bears the burden of producing 'evidentiary facts showing the existence of a triable issue of fact with respect to a *bona fide* defense.'" Indus. Bank of Japan Trust Co. v. Haseotes, No. 92 Civ. 6074, 1993 WL 322775, at *4 (S.D.N.Y. Aug. 19, 1993) (quoting Banner Indus., Inc. v. Key B.H. Assocs., L.P., 565 N.Y.S.2d 456, 456 (App. Div. 1st Dep't 1991)). However, as the Court noted above, under a valid absolute and unconditional guaranty, guarantors are typically precluded from raising affirmative defenses. See HSH Nordbank Ag N.Y. Branch, 672 F. Supp. 2d at 418.

Yet, even if the Court did consider Defendants' affirmative defenses, the Court finds that most of the defenses advanced by Defendants lack merit. On the first affirmative defense, Plaintiff has established that Sheridin defaulted on the Lease and Defendants likewise failed to perform under the Guaranty, entitling Plaintiff to enforce the Guaranty, constituting a claim. On the second affirmative defense, Defendants failed to set forth evidence or any argument of unclean hands, thereby failing to show the existence of a triable fact on this issue. On the third affirmative defense of fraud, the Court determined in the

38

prior section that this defense is wholly unavailing. On the fourth affirmative defense of compliance, Plaintiff established that Defendants did not comply with the Guaranty, as they have not repaid Plaintiff what was owed by Sheridin.

On the fifth affirmative defense of surrender, Defendants assert that Plaintiff accepted a surrender of the Premises when it re-let the Premises, which would effectively only allow collection of rent until the date of surrender. Plaintiff disputes that contention. The relevant provision of the Lease provides:

> No act or omission of Landlord or Tenant, or their respective employees, agents or contractors, including the delivery or acceptance of keys, shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid unless it is in a writing signed by Landlord.

(Lease § 25.4(d).) There is no dispute that Plaintiff did not provide in writing that it formally accepted Defendants' vacatur as a surrender of the Lease. In 228E58STR LLC v. Koleksiyon Mobilya San A.S., a court in this District, interpreting a similar good guy guaranty provision, declined to find that the plaintiff surrendered without evidence of a writing because the lease expressly required that any surrender be in writing and signed by the landlord. See 2020 WL 4260959, at *7. The provision in the lease at issue stated: "No act or thing done by Landlord or its agents shall be

deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid *unless in writing and signed by Landlord* . . . ." <u>Id.</u> (emphasis in original). Likewise, here, without a signed writing by the Landlord, the Court declines to find that Plaintiff accepted a surrender of the Lease by Defendants.

On the sixth affirmative defense of improper calculation of damages, the Court finds that this defense creates a triable issue. As the Court addressed in the previous section, certain computational errors in Count Four create a triable issue as to damages, warranting denial of summary judgment on Count Four as to damages.

On the seventh affirmative defense, the Court found above that Defendants, not Plaintiff, are liable for the damages stemming from their failure to comply with the terms of the Guaranty, and Defendants failed to specify in what ways Plaintiff caused its own damages.

On the eighth affirmative defense, Defendants assert that they are entitled to an offset of the damages on account of the improvements made to the Premises and the security deposit. Defendants fail to provide evidence for the improvements warranting a reduction in damages. However, Defendants argue that Sheridin provided Plaintiff a security

deposit of $34,780. The Guaranty expressly provides that
"Landlord is not required to resort to any security deposit
or other collateral it may hold . . . . No application of any
security held by Landlord shall be credited, offset or applied
against any liability of Guarantor under this Guaranty."
(Guaranty at 2.) The Guaranty "unambiguously provides that
the security deposit is not a factor in the calculation of
the monies owed by defendant[s] as guarantor." NYSOS Assocs.,
LLC v. Ottomanelli, 20 N.Y.S.3d 836, 837 (App. Term 2d Dep't
2015). Thus, pursuant to the terms of the Guaranty at issue,
Plaintiff is not required to offset the damages with the
security deposit.

The Court finds unavailing Defendants' ninth affirmative
defense that Plaintiff unreasonably withheld consent to
Sheridin's proposed assignees. Defendants assert through
Prakash's Declaration that Sheridin attempted to assign the
Lease to a third party, which Rothken refused. (See Hundalani
Decl. ¶ 11.)

Section 16.4 of the Lease provides that "Landlord agrees
not to unreasonably withhold or delay its consent to a
proposed assignment of this lease" (Lease § 16.4) unless all
of the enumerated conditions are met, including, among other
things, that the assignee possesses certain qualifications

for operating the Tenant's business (see id. § 16.4(c)) and that at the time of the assignment, "there is no Default" (id. § 16.4(e)).

Plaintiff argues that one of Sheridin's proposed assignees was rejected on financial grounds, pursuant to Section 16.4(c) of the Lease, and that the other proposed assignee was rejected because he failed to submit the required documentation for assignment. (See Brief at 19.) Plaintiff further argues, and the Court agrees, that Defendants were in default at the time of the assignment request because they had failed to pay the rent and additional rent for the month of September 2019, in contravention of Section 16.4(e) of the Lease. (See Rent Ledger at 8; Rothken Decl. ¶ 52.) Defendants in their Brief and supporting declarations fail to argue or provide any support for the defense that Rothken's rejection of their proposed assignees was unreasonable. Accordingly, the Court finds that Defendants' affirmative defense that Plaintiff unreasonably withheld consent lacks merit.

On the tenth affirmative defense, Defendants fail to provide evidence that Plaintiff received compensation from a collateral source or third party. On the eleventh affirmative defense, Defendants likewise fail to identify the positions made by Plaintiff in the State Court action, beyond those

42

addressed by the Court above, that would bar the Complaint. Accordingly, with the exception of the improper calculation of damages, even if it were proper for the Court to consider the affirmative defenses raised by Defendants to challenge the Guaranty, the Court finds that Defendants' affirmative defenses lack merit and do not warrant denying Plaintiff's motion for summary judgment on those grounds.

C.    MOTION TO STRIKE DEFENDANTS' JURY DEMAND

Plaintiff also moves to strike Defendants' jury demand (see "Jury Demand," Dkt. No. 14) on the ground that the Guaranty includes a jury waiver provision. Generally, "the right to a jury trial in the federal courts is to be determined as a matter of federal law." Morgan Guar. Trust Co. of N.Y. v. Crane, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999) (citing Simler v. Conner, 372 U.S. 221, 222 (1963)). The Seventh Amendment guarantees the right to trial by jury, with a presumption against its waiver. See Lehman Bros. Holdings Inc. v. Bethany Holdings Grp., LLC, 801 F. Supp. 2d 224, 229 (S.D.N.Y. 2011). However, "parties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the right to a jury trial." Morgan Guar. Trust Co. of N.Y., 36 F. Supp. 2d at 603. Such provisions, however, "are

narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly applied." Id.

A court must consider several factors to determine whether a contractual jury trial waiver was entered into knowingly and voluntarily. See id. at 603-04. Such factors include: "(1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver." Id. at 604 (citing Sullivan v. Ajax Navigation Corp., 881 F. Supp. 906, 911 (S.D.N.Y. 1995)).

Here, the Guaranty provides, in relevant part, that the guarantor "covenants and agrees that . . . in any action or proceeding brought in respect of this Guaranty, the undersigned hereby waives trial by jury[.]" (Guaranty at 2.) Despite previously making a jury trial demand, Defendants in their Opposition fail to oppose Plaintiff's motion to strike the jury demand.

Nevertheless, the Court finds that it is proper to uphold the jury trial waiver in the Guaranty. First, the Court finds that the waiver provision was negotiable. Defendants were represented by counsel -- Kukreja -- in negotiating the

44

Guaranty. Though Defendants challenged the notice provision contained within the contract, an argument the Court finds unavailing, at no point did Defendants challenge the jury waiver provision. In fact, the jury waiver provision was included in an earlier draft of the Guaranty shared between Kukreja and Prakash. (See Dkt. No. 45-2.) Moreover, there is no indication that the waiver provision was not negotiable.

Second, the Court finds that the jury trial waiver provision is sufficiently noticeable and conspicuous, warranting enforcement. The waiver provision is written in the same font and size as the remainder of the document. It is enumerated in the final substantive paragraph of the Guaranty. It was also not "set deeply and inconspicuously in the contract." Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977). The Court finds that Defendants would have been able to read this provision without issue.

Third, the Court finds that the relative bargaining power of the parties does not prevent enforcement of the jury waiver provision. The Court recognizes that the bargaining power between the parties are not equal. There are clear power differentials between a landlord such as Plaintiff, represented by a leasing agent, and two individuals seeking to run a small business. However, Defendants did not enter

the negotiations without representation, as they were represented by Kukreja who assisted them throughout the process of negotiating the Lease and Guaranty. Thus, despite the difference in bargaining power, the Court finds that such power difference was not so imbalanced so as to render the provision unenforceable.

Fourth, Defendants acknowledge themselves that Prakash, at least, has been in the restaurant business in New York City since 1986 and owned his first restaurant in 1993. (See Hundalani Decl. ¶ 2.) By the time Defendants entered into the Lease and Guaranty, Prakash would have been in the restaurant business for nearly 26 years. Throughout his career, he likely entered into several, if not numerous, business transactions, involving various types of contracts. Thus, the Court finds that Defendants, armed with an attorney, would have had sufficient business acumen to negotiate the waiver. Accordingly, the Court concludes that Defendants knowingly and voluntarily agreed to waive their right to a jury trial, and Plaintiff's motion to strike the jury demand is granted.

### IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 35) of plaintiff 789 Ninth & 414 East 74th Associates LLC ("Plaintiff") for summary

judgment pursuant to Federal Rule of Civil Procedure 56 against defendants Prakash Hundalani and Bina Hundalani (collectively, "Defendants") is **GRANTED** on Counts One, Two, Four, in part, and Five, in part, and **DENIED** on Counts Three, Four, in part, and Five, in part; and it is further

ORDERED that the motion (Dkt. No. 35) of Plaintiff to strike Defendants' jury demand is **GRANTED**; and it is further

ORDERED that within fourteen (14) days of the date of this Decision and Order, the parties shall jointly submit proposed dates and number of days anticipated for a bench trial after October 2023 on the remaining counts. The Clerk of Court is respectfully directed to terminate any pending motions.


**SO ORDERED.**

Dated:     11 July 2023
           New York, New York

_____
                                  Victor Marrero
                                     U.S.D.J.